UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RAFAEL ESTEBAN ABREU,
    *Plaintiff*,

v.

FRANCESCO LUPIS, et al.,
    *Defendants.*

No. 3:22cv1548 (OAW)

## INITIAL REVIEW ORDER

The plaintiff, Rafael Esteban Abreu, is a self-represented sentenced inmate who is in the custody of the Department of Correction ("DOC").[1] Plaintiff commenced this action under 42 U.S.C. § 1983, ECF No. 1, but upon initial review, the court determined that Plaintiff had not alleged any plausible claim and dismissed this matter without prejudice to amending the complaint. ECF No. 12. Plaintiff has so amended the complaint, this time asserting similar Eighth Amendment claims. ECF No. 14.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity, or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion thereof, that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The court thoroughly has reviewed the amended complaint in accordance therewith.

---

[1] The court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Publicly available information on the Connecticut DOC website shows that Plaintiff was sentenced on August 8, 2005, to a term of incarceration that has not yet expired. *See* Connecticut State: Department of Correction, *Offender Information Search,* available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=305514 (last visited July 23, 2025).

I.  **FACTUAL BACKGROUND**[2]

Plaintiff first suffered from abdominal pain and rectal bleeding in 2016 while he was housed at Cheshire Correctional Institution. After he was transferred to MacDougall Correctional Institution, he was treated by Dr. Francisco Lupis. Plaintiff asserts that Dr. Lupis failed to provide effective treatment for his condition, provided nonresponsive or dismissive responses to Plaintiff's written requests for medical, and falsely indicated that Plaintiff had been added to the sick call list. And when Plaintiff was seen in the medical unit, he was provided with only stool softeners and hemorrhoid cream, which did not help his symptoms. As Plaintiff's condition worsened, his requests for medical treatment went unanswered. Apparently as a consequence of his gastrointestinal difficulty, he also suffered from severe anemia, to the point that he needed to have four intravenous treatments by the end of 2020.

In December 2020, Plaintiff was referred to an outside specialist for a colonoscopy and an endoscopy, which showed that he had a bacterial infection called H. pylori. The specialist said that given Plaintiff's family history of cancer, he "may want" to get an MRI.[3]

In 2021, Plaintiff received rubber band ligation to treat his hemorrhoids, but he still continues to suffer from abdominal pain and bleeding. He still requires intermittent iron treatments and he believes that ought to receive more iron treatments than are being provided to him. Nevertheless, Plaintiff's requests for medical treatment go unanswered, even when his symptoms are severe. Plaintiff has requested an MRI as suggested by the doctor who performed his colonoscopy, but Dr. Lupis has refused to order one due to the expense.

---

[2] All factual allegations are drawn from the amended complaint and are considered to be true.
[3] The court notes that in his original complaint, Plaintiff alleged that H. pylori can turn into cancer.

Plaintiff complained several times to Chief Operation Officer ("RCOO") Kirsten Shey about Dr. Lupis's failure to provide him with effective treatment, but she never responded.

Plaintiff asserts claims of deliberate indifference to his serious medial needs against Dr. Lupis and RCOO Shey. He seeks damages and injunctive relief.

## II.     DISCUSSION

"Section 1983 provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

The Supreme Court of the United States has held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). Deliberate indifference to serious medical needs occurs when a prison official knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Harrison v. Barkley*, 219 F.3d 132, 137–38 (2d Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825,

847 (1994)).  In order to state a deliberate indifference claim, Plaintiff must allege both that his medical need was serious and that the defendants acted with a sufficiently culpable state of mind.  *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle*, 492 U.S. at 105).

Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The condition must be "one that may produce death, degeneration, or extreme pain." *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (quoting *Schermerhorn v. Local 100, Transport Workers Union*, 91 F.3d 316, 322 (2d Cir.1996)).  To determine whether a condition satisfies the objective standard, courts consider whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir.1992)).

Subjectively, a defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of their conduct.  *See Salahuddin v. Goord*, 467 F.3d 263, 280–81 (2d Cir. 2006).  Thus, a defendant's mere negligence is not cognizable on an Eighth Amendment deliberate indifference claim.  *Id.*  Although medical malpractice generally will not satisfy this standard, medical malpractice may constitute deliberate indifference when it "involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance*, 143 F.3d 703 (quoting *Hathaway*, 99 F.3d at 553).

Plaintiff asserts that RCOO Shey and Dr. Lupis failed to respond to his ongoing pain, bleeding, and weakness from anemia.  For purposes of this initial review only, the

court assumes Plaintiff suffers from sufficiently serious medical conditions to satisfy the Eighth Amendment's objective element.

The court thus turns to whether Plaintiff has alleged that any defendant acted with the requisite deliberate indifference to support his Eighth Amendment claims. *See Braxton v. Bruen*, No. 21-2795, 2023 WL 7478331, at *2 (2d Cir. Nov. 13, 2023) (explaining "[d]eliberate indifference in context of [an] Eighth Amendment claim requires that an official 'know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quoting *Tangreti*, 983 F.3d at 619).

### A.   **RCOO SHEY**

The United States Court of Appeals for the Second Circuit has held that "there is no special rule for supervisory liability." *Tangreti*, 983 F.3d at 618. A supervisory "defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996)). Thus "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti*, 983 F.3d at 618 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). For deliberate indifference claims more specifically, "the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Id.* at 616.

Plaintiff alleges that although he informed RCOO Shey about his inadequate treatment, she never responded. But mere receipt of a communication is insufficient to show personal involvement. *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 215 (S.D.N.Y. 2014) ("Thus, as a matter of law, a defendant's mere 'receipt of a letter or grievance, without personally investigating or acting [thereon], is insufficient to establish personal involvement.'" (quoting *Burns v. Fischer*, No. 13-CV-486 (LEK/CFH), 2014 WL 1413387, at *5 (W.D.N.Y. Feb. 3, 2014)) (alterations in original); *see also Lopez v. Chappius*, No. 6:17-CV-96395 EAW, 2021 WL 859384, at *2 (W.D.N.Y. Mar. 8, 2021) ("Even before *Tangreti*, it was 'well-established that a supervisor's failure to respond to a letter of complaint does not provide a sufficient basis to find that the defendant was personally involved in the deprivation alleged.") (quoting *Rodriguez v. Rock*, No. 9:13-CV-01106 DNH, 2015 WL 5147045, at *6 (N.D.N.Y. Sept. 1.2015)).

Accordingly, the court must conclude that Plaintiff has not alleged facts sufficient to support a plausible Eighth Amendment violation against RCOO Shey, and any such claims must be dismissed.

    **B.**     **DR. LUPIS**

Plaintiff asserts that for years Dr. Lupis failed to provide effective treatment for his maladies and refused to order an MRI, as had been suggested by the outside specialist. But it is well established that "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment." *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011). Thus, an inmate's disagreement with a medical provider over a course of treatment cannot support a constitutional claim for deliberate indifference. *Chance*, 143 F.3d at 703.

However, "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan," *Id.* at 703 (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir.1974)). "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Id.*

Here, the court cannot conclude that there is no treatment plan for Plaintiff, or that the treatment Plaintiff has been provided is not the product of sound medical judgment. In the first instance, it is clear that Dr. Lupis has tended to Plaintiff's conditions. It appears that throughout his time at MacDougall, Plaintiff was given creams and medications and transfusions to treat his symptoms. *See Mills v. Luplow*, 391 F. App'x 948, 951–52 (2d Cir. 2010) (finding no deliberate indifference where "throughout his incarceration, [the plaintiff] was given antibiotics and pain killers to treat his symptoms.") Later, Plaintiff received more robust therapies (the colonoscopy, endoscopy, and ligation). That Plaintiff's symptoms have not abated as much as one might hope they would is not indication of deliberate indifference.

Nor is the court persuaded that Dr. Lupis's refusal to order an MRI indicates that his treatment plan reflects "ulterior motives." In the first instance, "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."). *Estelle*, 429 U.S. at 107. And Plaintiff's allegation that the specialist said he "may want" an MRI does not indicate that the additional test is necessary or even routine. But the mere fact that Dr. Lupis cited the cost of the test does not convince the court that his judgment has been compromised. This is not a case where, for example, the provider prescribes treatments designed to

7

increase the provider's profits.  *Cf. Chance*, 143 F.3d at 704 (finding a deliberate indifference claim adequately pleaded where the plaintiff alleged providers recommended treatments "because of monetary incentives," which "ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment.").  Rather, Plaintiff's allegations only show that Dr. Lupis was unwilling to order an expensive test at the soft suggestion of another provider.  *See Ruddock v. Wolf*, No. 20-CV-1040 (JLS), 2020 WL 5988070, at *5 (W.D.N.Y. Oct. 9, 2020) (holding that where a plaintiff alleged that "a root canal is possible but [the Department of Homeland Security] will not perform the procedure because of its cost, his allegations do not establish a deliberate indifference claim" given the "numerous dental interventions" he had received).  And while Dr. Lupis did not order the MRI, he did order Plaintiff's colonoscopy and Plaintiff's ligation procedure, which DOC would have had to pay a private provider for, and the latter of which postdated the specialist's suggestion.  Thus, cost clearly is not the determinative factor in Dr. Lupis's treatment decisions.

Accordingly, the court concludes that Plaintiff has not stated any Eighth Amendment deliberate indifference claim against Dr. Lupis, either.

Thus, the entire complaint must be dismissed.  However, the court will grant Plaintiff one more opportunity to amend the complaint.  It should be noted, though, that it appears from DOC's inmate locator that Plaintiff has been transferred to Osborn Correctional Institution,[4] although he has not filed a notice of his change of address.  The

---

[4] *See* Connecticut State: Department of Correction, *Offender Information Search,* available at http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=305514 (last visited July 23, 2025).

court will accept an amended complaint only if Plaintiff also formally updates his address of record.

### III. ORDERS

The court enters the following orders:

(1) The amended complaint, ECF No. 14, is dismissed without prejudice.

(2) The Clerk of Court is instructed to please send a copy of this order to Plaintiff as Osborn Correctional Institution.  Plaintiff shall file a notice with the Clerk of Court updating his address of record on or before **September 26, 2025**.  Failure to do so will result in this dismissal converting to one with prejudice. If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c) provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify the defendants or defense counsel of his new address.

(3) Plaintiff may amend his complaint one final time on or before **September 26, 2025**.  Failure to do so will result in this dismissal converting to one with prejudice.

(4) Plaintiff shall utilize the Prisoner Electronic Filing Program when filing documents with the court.  He is advised that the Program may be used only to file documents with the court.  As discovery requests are not filed with the court, the parties must serve discovery requests on each other by regular mail.

**IT IS SO ORDERED** at Hartford, Connecticut, this 23rd day of July, 2025.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE